IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )| |
| ) | Case No. 1:22-CR-48 |
| v. ) | |
| ) | The Honorable Anthony J. Trenga |
| BRIAN SCOTT MCGALEM, ) | |
| a/k/a "Random Hipster," ) | Sentencing: November 9, 2022, 9am |
| a/k/a "Sircoolbeans," ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

For more than a year, the defendant befriended prepubescent and pubescent boys online, convinced each one that he was their friend, sexualized the friendship, then manipulated the boys so they would send him sexually explicit photos. He now comes before this Court having been convicted of the attempted production of child pornography and possession of child pornography. As reflected in the revised Presentence Investigation Report ("PSR," ECF No. 50), the correctly calculated Guidelines sentence is life imprisonment (with a statutory range of 15 to 50 years of imprisonment). For the reasons stated below, the United States requests that the Court sentence the defendant to a term of imprisonment between 30 and 35 years, followed by a lifetime of supervised release, full restitution to victims, forfeiture of the electronic devices used in connection with his crimes, and special assessments as set forth in statute. Such a sentence is sufficient but not greater than necessary to reflect the gravity of the defendant's conduct—repeatedly manipulating innocent children to satisfy his own sexual desires—and to meet the other 18 U.S.C. § 3553(a) sentencing factors.

## **BACKGROUND**

As the defendant admitted in the lengthy statement of facts underlying his guilty plea, the defendant spent at least a year persuading children whom he met through online gaming and social media to produce child pornography for him. The government's investigation of the defendant began when the mother of a 9-year-old boy (Minor Victim 1) alerted law enforcement that the defendant had been cultivating a relationship with her son online. Chat messages between the defendant and Minor Victim 1 reflect a pattern that the government eventually found[1] the defendant using with multiple victims: friendship based on mutual interests, sexualization of the friendship, followed by demands for child pornography and emotional manipulation. These patterns are evident from the statement of facts alone.

But what is not evident in the plea agreement is the intensity and skill with which the defendant pursued these boys. What follows are several excerpts[2] of several instances on which the defendant demanded that Minor Victim 1 produce child pornography. To begin, on November 15, 2021, the defendant sent Minor Victim 1 the following demands, aware that the defendant was a prepubescent minor and all within approximately 10 minutes:

| Date and Time | Sender | Text |
|---|---|---|
| 11-15-2021 05:43 | McGalem: | On some real shit I would've actually sucked you off if I was your age. Like I can already imagine it like we make a bet an im like if you win this apex arenas match ill suck you ðŸˆ |
| 11-15-2021 05:43 | | An your like |

---

[1] Although retention policies at various online providers left only a portion of the documentary evidence available for investigators to collect, there is strong evidence that the defendant demanded and obtained numerous photos and images of child pornography from other boys who have not yet been identified.

[2] At sentencing, the United States is prepared to introduce more than 60 pages of chat transcripts between Minor Victim 1 and the defendant, should those be helpful to the Court.

| | |
|---|---|
| 11-15-2021 05:43 | Ight bet |
| 11-15-2021 05:43 | An you actually clutch up |
| 11-15-2021 05:44 | Then im like [emoji] |
| 11-15-2021 05:44 | Lol send me video or a pic of it |
| 11-15-2021 05:44 | I won't judge |
| 11-15-2021 05:44 | Trust me |
| 11-15-2021 05:45 | Do it no balls |
| 11-15-2021 05:45 | Get that shit hard af [as fuck] |
| 11-15-2021 05:45 | Ight |
| 11-15-2021 05:46 | Idk |
| 11-15-2021 05:46 | Lol just send some cock pics |
| 11-15-2021 05:47 | Gah damn |
| 11-15-2021 05:47 | I think that would rip right through me |
| 11-15-2021 05:47 | I'm talking about your cock tho |
| 11-15-2021 05:48 | Please |
| 11-15-2021 05:48 | I wanna rate it |
| 11-15-2021 05:48 | Lol how [emoji] |
| 11-15-2021 05:49 | Just get your shit hard an send me a pic |
| 11-15-2021 05:50 | I'll send you a pic of mine [right now] if you send me one of yours |

Over the next several hours, the defendant intensified the sexual nature of his interactions with Minor Victim 1, engaging in simulated sexual chat, reminding Minor Victim 1 "you still owe me a video or a pick of your cock[,]" and telling him "I want you to send a dick pic when it's hard . . . Cause I wanna swallow it . . . An gooble [*sic*] it[.]"

A couple of days later, the defendant asked Minor Victim 1 to "[s]end a vid if you can Send a pic of your boner in your underwear." When Minor Victim 1 responded that he was not watching pornography, the defendant tried to refocus the conversation again, telling him "I want you to fuck me in any way you feel like . . . I would be your little boy toy . . . Send me yours now . . . Please you owe me . . . I'm curious on how it looks like . . . Just pretend we are in bed together an we are about to do it [emoji] an get it nice an hard under the covers an send a pic[.]" Thankfully, Minor Victim demurred, telling the defendant that he would provide a picture of his penis the following

3

day. So McGalem turned to manipulation, sending Minor Victim 1 messages about how much he

"loved" him:

| | | |
|---|---|---|
| 11-17-2021 04:58 | McGalem: | Damn dude this keeps happening |
| 11-17-2021 04:58 | | Idk maybe we moved on to sex with each other a little to fast |
| 11-17-2021 04:58 | | Maybe we should slow it down |
| | | * * * |
| 11-17-2021 04:59 | McGalem: | I guess I won't bug you anymore bout it |
| 11-17-2021 04:59 | | Idk if I turn you on |
| | | * * * |
| | McGalem: | Idk did you want to take a break from each other maybe |
| 11-17-2021 05:02 | | |
| 11-17-2021 05:03 | | Cause we can if you want to do that |
| | | * * * |
| 11-17-2021 05:07 | McGalem: | Remember I would never do anything to hurt you |
| 11-17-2021 05:07 | | I will protect you from anything |
| 11-17-2021 05:07 | | I promise you |
| 11-17-2021 05:07 | | I love you an I want you to be happy |
| | Minor Victim 1: | Ey thanks man I am so happy I met you some times |
| 11-17-2021 05:08 | | I get so happy that I met you I start to cry |
| 11-17-2021 05:08 | McGalem: | Awwww |
| 11-17-2021 05:08 | | Don't cry though |
| 11-17-2021 05:08 | | Just think about me hugging you |
| 11-17-2021 05:08 | Minor Victim 1: | Love you man [emoji] |
| | McGalem: | Cause if I ever saw you crying that's what I would do |
| 11-17-2021 05:08 | | |
| 11-17-2021 05:09 | | I would hold you in my arms until I see you smile |
| | Minor Victim 1: | Thank you man I was blessed that I got lucky to meet you |
| 11-17-2021 05:09 | | |
| | McGalem: | I will always try my hardest to help you with anything you need |
| 11-17-2021 05:10 | | |
| | | I will always be here for you for as long as you need me to be |
| 11-17-2021 05:10 | | |
| | Minor Victim 1: | Ey man as long your here I won't need anything all |
| 11-17-2021 05:11 | | I need is you |
| 11-17-2021 05:11 | | You make.me happy |
| 11-17-2021 05:11 | | I make you happy |
| 11-17-2021 05:12 | McGalem: | I really wish we were neighbors man |
| 11-17-2021 05:12 | Minor Victim 1: | Fr |
| 11-17-2021 05:12 | McGalem: | That would be so cool |
| 11-17-2021 05:12 | | I would let you come over all the time |
| 11-17-2021 05:12 | | An we could get food |

| | | |
|---|---|---|
| 11-17-2021 05:12 | | An play games |
| 11-17-2021 05:12 | | An chill |
| 11-17-2021 05:12 | Minor Victim 1: | Just thinking about |
| 11-17-2021 05:12 | McGalem: | Have awesome ass sleep overs |
| 11-17-2021 05:12 | Minor Victim 1: | It |
| 11-17-2021 05:12 | McGalem: | An parties |
| 11-17-2021 05:12 | Minor Victim 1: | Frrrrr [for real] |

The defendant continued in this vein for several more days, with the defendant inviting Minor Victim 1 to live with him "[w]hen I get my own place," promising that he would "never say any of our conversations to anyone else," and insisting that he loved Minor Victim 1. But the conversation rarely strayed far from McGalem's sex life and his attempts to further sexualize his relationship with Minor Victim 1.

On November 23, 2021, the defendant sent Minor Victim 1 a pornographic "fan fiction about us . . . like a what if story if we were both 11 years old" that featured the defendant being penetrated by Minor Victim 1. On November 24, 2021, the defendant sent Minor Victim 1 a package with a gaming headset. But around November 25, 2021, the defendant declared that his "dating" relationship with Minor Victim 1 was over and that he would seek other relationships.

The defendant ultimately failed to manipulate Minor Victim 1 into producing child pornography, but he succeeded with Minor Victim 2, who was under the age of 12 years at the time, persuading Minor Victim 2 to take and send pictures of his penis. PSR at ¶ 38. The defendant used a similar formula to entice and coerce Minor Victim 3 and Minor Victim 6 into sending sexually explicit pictures to him.

When agents of the Department of Homeland Security searched the defendant's home, they discovered multiple images and videos constituting child pornography on his electronic devices: specifically, two images containing child pornography on the laptop, one image on his phone, and four videos and one image in an online account connected to his phone. They also discovered

explicit images depicting other apparent and suspected minors. None of the minors depicted in these other photos and videos have been identified. And because of the nature of these photos and videos, these minors are unlikely to ever be identified, and consequently, will likely never be connected with the resources available to victims of sex crimes.

## THE GUIDELINES

As part of the plea agreement, the parties stipulated that they would recommend that Count One, the attempted production of child pornography, would be governed by § 2G2.1. Pursuant to § 2G2.1(d)(l), because the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) would be applied as if the exploitation of each minor had been contained in a separate count of conviction. PSR at ¶ 59. Accordingly, the parties stipulated that the guidelines for each minor identified as of the date of the plea would be calculated as follows:

**Minor Victim 1**

| Guideline(s) | Description | Offense Level |
|---|---|---|
| 2G2.1 | Base offense level (32) | 32 |
| 2G2.1(b)(1) | Offense involved a minor who had not attained the age of 12 years | +4 |
| 2G2.1(b)(6) | For the purpose of producing sexually explicit material, the offense involved the use of a computer and interactive computer service to solicit participation with a minor in sexually explicit conduct | +2 |

**Minor Victim 2**

| Guideline(s) | Description | Offense Level |
|---|---|---|
| 2G2.1 | Base offense level (32) | 32 |
| 2G2.1(b)(1) | Offense involved a minor who had not attained the age of 12 years | +4 |
| 2G2.1(b)(6) | For the purpose of producing sexually explicit material, the offense involved the use of a computer and interactive computer service to solicit | +2 |

6

| | participation with a minor in sexually explicit conduct | |
|---|---|---|

**Minor Victim 3**

| Guideline(s) | Description | Offense Level |
|---|---|---|
| 2G2.1 | Base offense level (32) | 32 |
| 2G2.1(b)(1) | Offense involved a minor who had not attained the age of 12 years | +4 |
| 2G2.1(b)(6) | For the purpose of producing sexually explicit material, the offense involved the use of a computer and interactive computer service to solicit participation with a minor in sexually explicit conduct | +2 |

The parties further agreed that the Court could consider information regarding any as-yet-unidentified minor victims who would be identified before sentencing as part of the sentencing in this case. Since the plea, the United States has identified the individual referred to in the PSR as Minor Victim 6 (previously referred to as Suspected Minor Victim 4) as a confirmed victim who sent sexually explicit pictures of his genitals to the defendant. PSR at ¶ 46. In accordance with the plea agreement, then, the Guidelines calculation would treat Minor Victim 6 as a separate count of conviction (Count 1C), as follows:

**Minor Victim 6**

| Guideline(s) | Description | Offense Level |
|---|---|---|
| 2G2.1 | Base offense level (32) | 32 |
| 2G2.1(b)(6) | For the purpose of producing sexually explicit material, the offense involved the use of a computer and interactive computer service to solicit participation with a minor in sexually explicit conduct | +2 |

This results in a one-unit increase in the grouping calculation for Count 1 a total of 4.0, with a corresponding one-unit increase in the offense level. PSR at ¶¶ 90-91.

With respect to Count Two, the parties stipulated that the Guidelines would be governed by § 2G2.2 and stipulated to the following enhancements (PSR at ¶¶ 81-89):

| Guideline(s) | Description | Offense Level |
|---|---|---|
| 2G2.2(a)(1) | Base offense level (18) | 18 |
| 2G2.2(b)(2) | Offense involved a prepubescent minor | +2 |
| 2G2.2(b)(5) | Offense involved a pattern of activity involving sexual abuse or exploitation of a minor | +5 |
| 2G2.2(b)(6) | Offense involved the use of a computer | +2 |

Based on the post-plea investigation, the United States confirmed that the defendant possessed two videos and two images containing child pornography on his laptop, one image on his phone,[3] and four videos and one image in an online account connected to his phone. This correctly results a four-point enhancement for the offense level attributable to Count Two. PSR at ¶ 46.

The defendant also properly received a five-point enhancement to the offense level under U.S.S.G. § 4B1.5(b) for a pattern of activity involving prohibited sexual conduct. PSR at ¶ 98; *see also United States v. Dowell*, 771 F.3d 162, 170-71 (4th Cir. 2014).

The PSR thereafter calculated the defendant's total offense level as 44, PSR ¶ 99, having correctly calculated that the adjusted offense level for the grouped attempted production/possession counts is a 42 and recognizing that a total offense level over 43 is treated as a level 43. The PSR also properly calculated the defendant's criminal history category as a II,

---

[3] This image of Minor Victim 6 was discovered on the defendant's phone shortly before sentencing. Because the next level at which the offense level increases under U.S.S.G. § 2G2.2(b)(7)(C) is 600 images and this image did not approach that limit, the discovery will not affect the calculation of the Guidelines range.

PSR at ¶ 106, resulting in a Guidelines sentence of life capped by the statutory maximum of 600 months (*i.e.*, 30 years for Count One + 20 years for Count Two). PSR at ¶ 131.

## SENTENCING RECOMMENDATION

The defendant's skill and persistence make this a case worthy of a significant sentence well above the mandatory minimum of 15 years. Hours of forensic interviews collected during this investigation confirm the irreparable harm imposed by the defendant's manipulation and exploitation of these boys, all of which will be borne by the victims, their families, and their loved ones for years to come. The statutory factors here justify a sentence in the range of 30-35 years, a lifetime of supervised release, full restitution, forfeiture of the electronic devices used in connection with his crimes, and statutory special assessments.

***History and characteristics.*** Although the defendant has no prior convictions, his history and characteristics – namely his prior prosecution for assault involving the use of pepper spray against a family member for disconnecting the power to the internet – indicates a vindictive temperament. *See* PSR at ¶ 103. This then defendant targeted the most vulnerable members of society—prepubescent and teenage children—using an arsenal of manipulation. First, he befriended them and sought to enmesh himself in their lives, then sexualized the relationships and escalating their intensity, followed ultimately by his attempts to exploit the children. As shown in the chats with Minor Victim 1 included above, despite McGalem's claims that he "loved" these children, if his potential victim balked, McGalem would guilt-trip him and cut off the relationship, further demonstrating the intensity of his manipulation. The defendant was also tech-savvy, using used encryption to hide some of the evidence of his crimes by storing some of the child pornography in an encrypted vault on an app connected to his phone. The government remains concerned that it has not identified all of the children who appear on his devices, and despite its

9

best efforts, may never be able to identify the rest. And it may never be able to rule out whether the defendant has additional child sexual abuse material stored elsewhere.

   ***The need for the sentence to reflect the seriousness of the offenses and to provide just punishment.*** Child pornography is a vile, heinous crime whose horror cannot be fully captured in words. As "[l]ong-term studies" confirm, "sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *United States v. Irey*, 612 F.3d 1160, 1207 (11th Cir. 2010) (en banc) (collecting authority). To reflect the seriousness of this crime, those who participate in this evil must be punished severely. *See United States v. Morace*, 594 F.3d 340, 350 (4th Cir. 2010) (citing a 2003 legislative enactment as "ample evidence of Congress's intent that offenses involving child pornography be treated severely"). Sadly, "[t]he exploitation of children is pandemic. The most vulnerable members of our society have been exploited and discarded." *United States v. Cunningham*, 680 F. Supp. 2d 844, 848 (N.D. Ohio 2010), (quoting *United States v. Cruikshank*, 667 F. Supp. 2d 697, 701-02 (S.D.W.Va. 2009) (citation omitted)), *aff'd* 669 F.3d 723 (6th Cir. 2012).

   "When child pornography is produced in conjunction with the sexual abuse of children, . . . the harm to the child victims is magnified and perpetuated." *Irey*, 612 F.3d at 1208. "Such images are 'a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.'" *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) (quoting *United States v. Ferber*, 458 U.S. 747, 759 (1982)); *accord United States v. Accardi*, 669 F.3d 340, 345 (D.C. Cir. 2012). Indeed, "[e]very instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(2)(D), 120 Stat. 587, 624 (2006)

(codified at 18 U.S.C. § 2251 note); *accord United States v. Sherman*, 268 F.3d 539, 547-48 (7th Cir. 2001) (recognizing that "[t]he possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters"). These children, "who must live with the knowledge that adults like [the defendant] can pull out a picture or watch a video that has recorded the abuse of [them] at any time," "suffer a direct and primary emotional harm when another person possesses, receives or distributes the material." *Sherman*, 268 F.3d at 547-48.

It is thus unsurprising that when one "[m]ention[s] the term [child pornography] to your average American[,] . . . he responds with immediate disgust and a sense of unease." *Cunningham*, 680 F. Supp. 2d at  847. But as the *Cunningham* court warned, "once it enters the legal system, child pornography undergoes sterilization . . . far beyond properly removing emotion from sentencing decisions." *Id.* "Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement." *Id.* Indeed, the victims in this case have already been subjected to a lifelong scar worse than any punishment the defendant could now receive, having been ruthlessly manipulated and exploited by the defendant even before their growing minds and bodies could mature. The Government requests that the Court impose a sentence that reflects the full impact of the crime on the victims.

***The need to deter the defendant, to protect the public from further crimes of the defendant, and to provide the defendant with treatment.*** Incapacitation – preventing McGalem from reoffending <u>at all</u> – should be a primary objective of the Court's sentence. One of the most chilling aspects of the defendant's crimes is the way that his smooth, practiced words precisely targeted the interests and emotional needs of the boys whom he was exploiting. He knew his

victims intimately: their social context, their insecurities, their relational environments, their enjoyment of video games and pornography, and so on. Because of his skill, McGalem is very likely to have the means and capability to reoffend. McGalem's dangerousness is clearly evidenced by his pattern of grooming and exploiting young boys.  A strong sentence here is critical to address "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class." *Smith v. Doe*, 538 U.S. 84, 103 (2003); *see also Cunningham*, 680 F. Supp. 2d at 855-56, 859-60 (discussing recidivism studies).

And even if a defendant *could* be described as a "low risk" to recidivate, "[a] low risk is not the same as no risk." *Irey*, 612 F.3d at 1216-17. "Adequate protection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *Id.* at 1217; *cf. United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011) ("The sadistic nature of much of the child pornography consumed by the defendant is another reason to worry about his being on the loose."). "Nor does the fact that [the defendant] will be subject to restrictions and supervised release [if] he gets out of prison offer any guarantee that he will not commit any crimes." *See Irey*, 612 F.3d at 1215 (discussing studies and other data showing that "supervised release . . . often fails to prevent sex offender recidivism"). In short, "[s]upervised release is better than unsupervised release, but it does not offer society the level of protection from a convicted criminal that incarceration does." *Id.* at 1216. A lengthy term of incarceration is thus warranted.

***The need to deter criminal conduct generally and promote respect for the law.*** The sentence in this case must also send a loud message to all those who would try to persuade children to produce child pornography that severe consequences come from committing such heinous acts. Indeed, "the deterrence objective of sentencing is 'particularly compelling in the child

pornography context.'" *Irey*, 612 F.3d at 1211 (citation omitted). No matter how determined a potential offender may be, it is common sense that strong sentences will likely alter the behavior of these individuals, and that "imposing a lighter sentence on one convicted of a child pornography offense 'tends to undermine the purpose of general deterrence, and in turn, tends to increase (in some palpable if unmeasurable way) the child pornography market.'" *Id.* (citation omitted); *accord Garthus*, 652 F.3d at 721-22; *see also Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand.").

   ***The need to avoid unwarranted sentencing disparities.*** A substantial sentence would also avoid unwarranted disparities and be sufficient but not greater than necessary to accord with the purposes of sentencing under 18 U.S.C. § 3553(a).

   Notably, district courts within this Circuit have repeatedly ordered, and the Fourth Circuit has repeatedly affirmed, sentences tantamount to life, at the statutory maximum, and/or otherwise decades-long, for similar conduct. *See, e.g.*, *United States v. Mills*, 850 F.3d 693, 696, 700 (4th Cir. 2017) (45 years for manufacturing child pornography with ten minors); *United States v. Dowell*, 771 F.3d 162, 164-65, 168-69 (4th Cir. 2014) (80 years for production with two prepubescent victims); *United States v. Hallman*, 549 F. App'x 147, 148 (4th Cir. 2013) (120 years for production with multiple victims); *United States v. Davison*, 492 F. App'x 391, 393 (4th Cir. 2012) (life sentence for production with 1 victim, where prior conviction for attempted rape as teenager); *United States v. Mattocks*, 408 F. App'x 717, 718 (4th Cir. 2011) (50 years for manufacturing and transporting child pornography); *United States v. Parlagreco,* No. 1:20-cr-243, (E.D. Va. 2021) (Ellis, J.) (ECF No. 54) (31 years for pattern of production, distribution, and possession of child pornography involving numerous victims); *United States v. Thompson*, No.

8:17-cr-195 (D. Md. 2019) (ECF Nos. 5, 125) (420 years for production with 3 prepubescent victims).

So have courts in other jurisdictions. *See, e.g.*, *United States v. Curuchiche*, 712 F. App'x 564 (6th Cir. 2018) (50 years for production involving 1 prepubescent victim); *United States v. Belanger*, 683 F. App'x 38 (2d Cir. 2017) (40 years for enticing ten-year-old to send sexually explicit videos to defendant); *United States v. Bailes*, 665 F. App'x 340 (5th Cir. 2016) (135 years for production, distribution, receipt, and possession, as well as abuse of 2 children); *Irey*, 612 F.3d at 1220-21 (providing extensive string cite of cases affirming sentences of 30 to 140 years for production offenses).[4]

Of course, what this Court is asked to decide is not what sentence was appropriate in other cases, but what sentence is appropriate for this defendant. The cited cases simply stand for the proposition that a sentence of 30-35 years' imprisonment is reasonable, indeed conservative, for this defendant. And as explained above, such a sentence would be well-deserved in light of the egregiousness of the defendant's conduct, the vulnerability of the victims, and his likelihood of reoffending.

**Supervised Release.** The Court must also determine the appropriate term of supervised release at sentencing. "Supervised release . . . is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). Instead, it "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000).  Under 18 U.S.C.

---

[4] *Cf. United States v. Strieper*, 666 F.3d 288, 296 (4th Cir. 2012) (35-year Guidelines sentence for distribution/receipt, possession, and attempted enticement); *Garthus*, 652 F.3d at 717, 721-22 (30-year sentence for *non*-production offenses for 44-year-old offender who previously molested child); *United States v. Snodgrass*, 635 F.3d 324, 330 (7th Cir. 2011) (above-Guidelines sentence of 30 years for attempted receipt and possession, where defendant had "lifelong pattern of abusive behavior against minors").

§ 3583(k), the authorized term of supervised release for the defendant's offense is at least five years and up to life. This five-year mandatory minimum term reflects a heightened concern for recidivism among sex offenders and the need for supervision over time. *See, e.g.*, H.R. Rep. No. 107-527, at 2 (2002) (explaining that "studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes" and that "the recidivism rates do not appreciably decline as offenders age"). Notably, the Guidelines recommend a lifetime term of supervised release for sex offenders, U.S.S.G. § 5D1.2(b) (Policy Statement), and the Fourth Circuit has observed that § 3583(k) and § 5D1.2(b) jointly "reflect[] the judgment of Congress and the Sentencing Commission that a lifetime term of supervised release is appropriate for sex offenders in order to protect the public." *Morace*, 594 F.3d at 351 (citations omitted).

Based on an assessment of these factors, the United States requests that the Court impose a lifetime of supervised release with the conditions of supervision described in 18 U.S.C. § 3583(d) for defendants required to register under the Sex Offender Registration and Notification Act and those described in U.S.S.G. § 5D1.3(d)(7) for sex offenders. Given the defendant's longstanding, extensive, and relentless pursuit of children to exploit, *see supra*, a lifetime term of supervision is the only effective means to mitigate as much as possible the risk that he will reoffend, and also to provide him with steady access to the treatment and monitoring he will clearly require when released into the community.

**Restitution.** Pursuant to 18 U.S.C. §§ 2259 and 3663, as well as the plea agreement, the defendant must pay restitution in the "full amount of the victims' losses." PSR ¶ 14. To date, the government has not received any requests relating to restitution. Pursuant to the plea agreement, the defendant also agreed that the Court may defer the imposition of restitution until after sentencing and to waive the requirement under 18 U.S.C. § 3664(d)(5) that the Court determine a

final restitution amount no later than ninety days after sentencing. *Id.* As of the date of this filing, the United States has received no restitution requests but will present any received prior to sentencing at the sentencing hearing. Any restitution requests received after sentencing will be presented to the Court at the earliest possible opportunity for resolution.

**Forfeiture.** The United States and the defendant entered a consent order for forfeiture of the devices identified in the plea agreement and request that the Court order such forfeiture as part of the judgment. *See* ECF No. 42, PSR ¶¶ 17-19.

**Mandatory Special Assessments Under 18 U.S.C. §§ 2259A(a)(3), 3013, and 3014.** On December 7, 2018, Congress enacted the Amy, Vicky, and Andy Child Pornography Victim Assistance Act. The Act instructs that, in addition to any restitution or other special assessment, courts "*shall* assess . . . not more than $50,000 on any person convicted of a child pornography production offense." 18 U.S.C. § 2259A(a)(3) (emphasis added). Assessments collected under this statute are deposited in the Child Pornography Victims Reserve, which provides monetary assistance to victims of trafficking in child pornography, *see* §§ 2259(d) & 2259B, and shall be paid in full after any special assessment under § 3013 and any restitution to victims of the defendant's offense, *see* § 2259A(d)(2). In determining the amount to be assessed under § 2259A, courts should consider the sentencing factors set forth in § 3553(a) and the guidance in § 3572 for the imposition of fines. § 2259A(c).

Given the gravity and extensiveness of the defendant's offense conduct and the fact that none of the victims have requested compensation from the defendant for restitution purposes, the United States respectfully requests that the Court impose a reasonable special assessment under this statute, in addition to the $200 mandatory special assessment for his felony convictions pursuant to 18 U.S.C. § 3013.

16

Moreover, under the Justice for Victims of Trafficking Act of 2015 (JVTA), the court "shall assess an amount of $5,000" for each count because the defendant is non-indigent for a total of $10,000. 18 U.S.C. § 3014(a) (renewed and extended through December 16, 2022). This is a mandatory assessment for any non-indigent defendant convicted of, among other offenses, attempted production and possession of child pornography.  18 U.S.C. § 3014(a)(3).[5] While the statute is silent as to how to determine indigence, courts have treated the imposition of this assessment like the imposition of other post-conviction assessments, where "[t]he defendant bears the burden of proving both his inability to pay at the time of sentencing and that he is not likely to become able to pay a fine upon his release from his term of imprisonment." *United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017) (internal citations and quotation marks omitted).  Relevant factors to consider in this determination include a defendant's future earning potential, assets, educational background, employment history, age, and physical condition. *See United States v. McMiller*, 954 F.3d 670, 675 (4th Cir. 2020) ("[W]e agree with our sister circuits that a district court may consider a defendant's future earning potential when determining his ability to pay an assessment under 18 U.S.C. § 3014(a)." (citations omitted)); *see also United States v. Mann*, 770 F. App'x 649, 650 (4th Cir. 2019); *United States v. Graves*, 908 F.3d 137, 143 (5th Cir. 2018).  Here, the defendant is a young, physically capable adult with the ability to work following his term of incarceration.  This indicates that the defendant will be able to pay a $10,000 special assessment ($5,000 per count of conviction) upon his release from imprisonment, if not at

---

[5] The money obtained from this assessment goes to the Domestic Trafficking Victims' Fund, which is used to award grants and enhance programming for victims of human trafficking and child pornography and is payable after the defendant has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim compensation. *See* 18 U.S.C. § 3014(b) & (e).

the time of sentencing.  Accordingly, the United States respectfully requests that the Court find the defendant not indigent and impose the mandatory special assessment under 18 U.S.C. § 3014.

<u>**CONCLUSION**</u>

For the foregoing reasons, the United States respectfully requests that the Court impose a term of incarceration of between 360 and 420 months (30-35 years), a lifetime of supervised release, full restitution, forfeiture of the defendant's electronic devices, a reasonable special assessment under 18 U.S.C. § 2259A, a $200 special assessment under 18 U.S.C. § 3013, and a $10,000 special assessment under 18 U.S.C. § 3014.

Respectfully Submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
Jonathan Keim
Assistant United States Attorney
Whitney Kramer
Special Assistant United States Attorney (LT)
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: jonathan.keim@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 2, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to counsel of record in this case.

I further certify that on November 2, 2022, I sent a copy of the foregoing via electronic mail to counsel of record and the U.S. Probation Officer assigned to this matter:

Jennifer Lyerly
United States Probation Office
Email: Jennifer_Lyerly@vaep.uscourts.gov


By:     /s/
         Jonathan Keim
         Assistant United States Attorney
         United States Attorney's Office
         2100 Jamieson Avenue
         Alexandria, Virginia 22314
         Phone: (703) 299-3700
         Fax: (703) 299-3981
         Email: jonathan.keim@usdoj.gov